**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **BERKLEY INSURANCE CO.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| v. | § | Civil Action No. 4:23-cv-00847-O |
| | § | |
| **STEPHANIE RINCON JIMENEZ and** | § | |
| **ENOS FERDINAND,** | § | |
| | § | |
| **Defendants.** | § | |

<u>**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**</u>
<u>**OF THE UNITED STATES MAGISTRATE JUDGE**</u>

Before the Court is Plaintiff Berkley Insurance Company's Motion for Default Judgment, filed September 27, 2023. ECF No. 13. By Order dated October 5, 2023, United States District Judge Reed O'Connor referred the Motion to the undersigned for hearing, if necessary, and final determination under 28 U.S.C. § 636(b). ECF No. 14. Having considered the Motion, briefing, appendices, and applicable legal authorities, the undersigned **RECOMMENDS** that Judge O'Connor **GRANT** Plaintiff's Motion for Default Judgment (ECF No. 13), **IMPOSE** a constructive trust on 321 Fort Edwards Dr., Arlington, Texas 76002 and DFW Elite Motors LLC's assets, and **AWARD** $169,078.36 in actual damages, $169,078.36 in exemplary damages, costs as calculated by the clerk, pre-judgment and post-judgment interest under applicable law, and reasonable attorney's fees in an amount to be entered in a subsequent order following additional briefing.

**I.       BACKGROUND**

This case involves allegations that an assistant property manager in an apartment complex, Stephanie Jimenez ("Jimenez"), took money that did not belong to her, giving rise to a variety of state-law claims. ECF No. 1 at 2-4.

Plaintiff Berkley Insurance Company ("Berkley") is an assignee and subrogee of Redwood Capital Group, LLC ("Redwood."), "a real estate investment manager that owns and operates multifamily residences across the country, including the Verandahs at Cliffside, located at 1705 NE Green Oaks Blvd, Arlington, TX 76006." *Id*. at 1-2.

In July 2021, Redwood regional manager Laurie Mineart ("Mineart") "noticed that revenue was not increasing despite increasing rent prices." *Id*. Mineart observed the same phenomenon in August and September 2021, as well. *Id*. She reviewed the Verandahs' ledgers and saw that Jimenez "had made numerous questionable edits to the ledgers." *Id*. Another property manager confirmed "that [her] edits were suspicious." *Id*. at 3. On October 13, 2021, Mineart confronted Jimenez about the entries over the phone, and Jimenez quit immediately thereafter. *Id*.

"Redwood investigated and found that Jimenez had been stealing rent payments and manipulating the Verandahs' accounts to conceal her theft." *Id*. Redwood ordered a forensic accounting of the Verandahs' accounts to determine how much money Jimenez had taken. *Id*. This report indicated that Jimenez took $169,078.36. *Id*.; ECF No. 1-2 at 4.

Berkley alleges "on information and belief" that Jimenez and her husband, defendant Enos Ferdinand ("Ferdinand"), purchased a home in Arlington, Texas using funds Jimenez stole from Redwood, that they "purchased lavish vacations and other personal property" with Redwood's funds, and that Jimenez opened a business, DFW Elite Motors LLC, and continues to operate the business using funds that she took from Redwood. ECF No. 1 at 3.

"Redwood submitted an insurance claim for indemnity of the amounts stolen by Jimenez to its insurer, Berkley, which had issued a policy of insurance to Redwood that covered losses sustained as a direct result of theft by an employee of the insured." *Id*. at 4. "On April 4, 2023, Berkley paid $149,078.36—the amount of Redwood's loss plus $5,000 for investigative costs, less

the $25,000 deductible—to Redwood under the policy." *Id*. "In consideration of this payment, Redwood executed a Partial Release and Assignment, which assigned all of Redwood's claims, rights, demands and causes of action against Jimenez to Berkley." *Id*.

"On May 8, 2023, and June 15, 2023, Berkley, as assignee and subrogee of Redwood, demanded that Jimenez and her husband return to it the total of $169,078.36, satisfying any conditions precedent to Berkley's right to sue." *Id*. at 4. "To date, Jimenez and her husband have ignored Berkley's demands." *Id*. at 4.

Accordingly, on August 14, 2023, Berkley sued Jimenez for conversion, violation of the Texas Theft Liability Act, fraud, unjust enrichment, breach of fiduciary duty, constructive fraud, money had and received, and conspiracy. ECF No. 1 at 4-9. Berkley sued Ferdinand for unjust enrichment, money had and received, and conspiracy. ECF No. 11 at 1-2; ECF No. 1 at 4-9. Berkley requests that the Court impose a constructive trust on 1) the property at 321 Fort Edwards Dr., Arlington, Texas 76002; on 2) "DFW Elite Motors LLC, its bank accounts, inventory, and any other business property as Jimenez used some or all of the stolen funds to operate the business;" and 3) "on the money in the amount of $169,078.36 representing the amount of money Jimenez stole from Redwood." ECF No. 1 at 9. The third request appears to be absent in the instant Motion, so the Court does not consider it. ECF No. 13. Berkley also seeks attorney's fees, pre-judgment and post-judgment interest, exemplary damages, costs of court, and "such other and further relief to which Berkley may be justly entitled." ECF No. 1 at 10.

Both defendants have failed to participate in this lawsuit. On August 15, 2023, the clerk issued a summons for each defendant, and on August 22, 2023, both summonses were returned executed. ECF Nos. 7-9. On September 14, 2023, Judge O'Connor ordered Berkley to "move for

entry of default against Defendants no later than September 28, 2023 and, upon entry of default, to file a motion for default judgment under Federal Rule of Civil Procedure 55." ECF No. 10.

On September 18, 2023, Berkley requested that the Clerk enter default against Jimenez and Ferdinand (collectively, "Defendants"), since Defendants' answers to the complaint were due on September 6, 2023 and no exception to default applied. ECF No. 11 at 2, 3. On that same day, the Clerk entered default as to the Defendants. ECF No. 12. On September 27, 2023, Berkley moved for default judgment against Defendants (ECF No. 13), and on October 5, 2023, Judge Reed O'Connor referred the motion to the undersigned. ECF No. 14.

## II.   LEGAL STANDARDS

Federal Rule of Civil Procedure 55 governs the entry of default and default judgment. There are three stages to entry of default judgment. First, a default occurs "when a defendant has failed to plead or otherwise respond to the complaint within the time required by the Federal Rules." *N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996); *see also* Fed. R. Civ. P. 55(a) (noting default occurs where the defendant "has failed to plead or otherwise defend" against the complaint). Second, the Clerk may enter a defendant's default if it is "established by affidavit or otherwise." *Brown*, 84 F.3d at 141 (citing Fed. R. Civ. P. 55(a)). Third, if the Clerk enters default and the plaintiff's claim is not "for a sum certain or a sum that can be made certain by computation," the plaintiff must apply for a default judgment from the Court. Fed. R. Civ. P. 55(b) (1-2). However, the Court may not enter default judgment against an individual in military service until an attorney is appointed to represent the defendant. 50 U.S.C. § 521.

"[A] party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default." *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001). Rather,

courts retain ultimate discretion to grant or deny default judgments. *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

Courts use a three-pronged analysis to determine if default judgment is appropriate. *J & J Sports Prods., Inc. v. Morelia Mex. Rest., Inc.*, 126 F. Supp. 3d 809, 813 (N.D. Tex. 2015). First, courts ask if default judgment is procedurally warranted. *See Lindsey*, 161 F.3d at 893. Under *Lindsey*, the Court may consider whether: (1) material issues of fact exist; (2) there has been substantial prejudice; (3) the grounds for default are clearly established; (4) the default was caused by a good faith mistake or excusable neglect; (5) default judgment would be too harsh; and (6) the Court would be obliged to set aside the default upon motion from the defendant. *Id.*

Second, if default is procedurally warranted under *Lindsey*, courts analyze the substantive merits of the plaintiff's claims and ask if the pleadings establish a sufficient basis for default judgment. *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). The pleadings are sufficient if they satisfy Federal Rule of Civil Procedure 8. *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015); *see* Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). "The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." *Nishimatsu*, 515 F.2d at 1206. But the "defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Id.*

Third, courts determine what form of relief, if any, the plaintiff should receive. *Morelia*, 126 F. Supp. 3d at 813. In making this determination, the Complaint's "well-pleaded factual allegations are taken as true, except regarding damages." *U.S. for Use of M-Co Constr.*, *Inc. v. Shipco General, Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987); *see generally Jackson v. FIE Corp.*,

302 F.3d 515, 525 & n.29 (5th Cir. 2002) ("If the court determines that defendant is in default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.") (quoting 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY K. KANE, FEDERAL PRACTICE & PROCEDURE § 2688 at 58-59 & n.5 (3d ed. 1998)). At this juncture, courts often find it helpful to conduct a Rule 55(b)(2) hearing. *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979) ("The case law is clear that a judgment by default may not be entered without a hearing unless the amount claimed is a liquidated sum or one capable of mathematical calculation."); *see* Fed. R. Civ. P. 55(b)(2) (noting courts may conduct a hearing on motions for default judgment if needed to "(A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter").

While the Fifth Circuit has "adopted a policy in favor of resolving cases on their merits and against the use of default judgments," this policy is "counterbalanced by considerations of social goals, justice and expediency, a weighing process . . . largely within the domain of the trial judge's discretion." *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 742 F.3d 576, 594 (5th Cir. 2014) (quoting *Rogers v. Hartford Life & Accident Ins. Co.*, 167 F.3d 933, 936 (5th Cir. 1999)). But default judgment remains "a drastic remedy, not favored by the Federal Rules." *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989); *see also Shipco*, 814 F.2d at 1014 (calling default judgments "draconian").

## III.   ANALYSIS

### A.   Default judgment is procedurally warranted under *Lindsey*.

Under *Lindsey*, default judgment may be procedurally warranted based on six considerations. *See* 161 F.3d at 893. Each of the six supports default judgment for Berkley's claims.

For the first factor, no material issues of fact remain for Berkley's claims. As explained below, Berkley has stated a claim for its causes of action. Furthermore, since Defendants have not participated in this suit, they have not disputed any material facts in the suit.

For the second factor, nothing here shows that the "substantial prejudice" requirement would undermine Berkley's entitlement to default judgment. *See Lindsey*, 161 F.3d at 893. If anything, this requirement strengthens Berkley's entitlement to default judgment, because Berkley may be prejudiced by Defendants' non-participation. *See United States v. Petra Corp*., No. 3:22-CV-0930-B, 2023 WL 4374432, at *3 (N.D. Tex. July 6, 2023) (noting that the defendants' "failure to respond threatens to bring the adversary process to a halt, effectively prejudicing the [participating party's] interests."); *see also* ECF No. 13 at 3 ("Defendants' failure to appear and respond has prejudiced Berkley's interest in pursuing its claims for relief by halting the adversarial process.").

The third and fourth factors also support default judgment because the grounds of Defendants' default are clearly established, *see* ECF Nos. 7-13, and nothing shows that the default was due to "a good faith mistake or excusable neglect." *See Lindsey*, 161 F.3d at 893.

As for the fifth factor, to date Defendants have failed to file any pleadings with the Court, despite being afforded abundant opportunities to do so. It has been nearly a year since Berkley filed its complaint, and Defendants have filed nothing. Accordingly, the fifth factor supports default judgment, as a judgment by default is not too harsh when the defaulting party has had every opportunity to plead its cause but did not do so. *See id.*

Finally, given the satisfaction of the above elements, nothing indicates that the Court would "be obliged to set aside the default upon motion from the defendant." *See id.*; *see also Moreno v. LG Elecs.*, 800 F.3d 692, 698 (5th Cir. 2015) (noting district courts are not obliged to set aside a

default upon defendant's motion where "the default was willful, the plaintiff will be prejudiced, or the defendant has no meritorious defense").

With each of the six *Lindsey* factors supporting default judgment on Berkley's claims, they survive the step-one analysis. *See Morelia*, 126 F. Supp. 3d at 813-14. At step two, the Court must examine the substantive merits of Berkley's claims and determine whether the pleadings establish a sufficient basis for default judgment on each. *See Nishimatsu*, 515 F.2d at 1206. The Court finds that some of Berkley's claims survive this analysis, but others do not.

### B.    Berkley's pleadings satisfy Rule 8, and its fraud pleading meets Rule 9.

A plaintiff's pleadings typically establish entitlement to default judgment if they satisfy Federal Rule of Civil Procedure 8. *Wooten*, 788 F.3d at 498. To do so, the pleadings need only contain "a short and plain statement of the claim" showing the plaintiff's entitlement to relief. Fed. R. Civ. P. 8(a). Factual allegations need only "be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Wooten*, 788 F.3d at 497 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "This low threshold is less rigorous than that under Rule 12(b)(6)." *Liberty Burger Prop. Co. v. Liberty Rebellion Rest. Group, LLC*, No. 3:22-CV-00085-E, 2023 WL 349790, at *4 (N.D. Tex. Jan. 20, 2023) (internal citations and quotations omitted) (citing *Wooten*, 788 F.3d at 498).

"In federal court, fraud claims must also satisfy the heightened pleading standard set out in Federal Rule of Civil Procedure 9(b)." *Edge Adhesives, Inc. v. Sharpe Concepts, L.L.C.*, No. 4:15-CV-405-O, 2015 WL 12743618, at *3 (N.D. Tex. Aug. 31, 2015). "[A]rticulating the elements of fraud with particularity requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the

statements were fraudulent." *Williams v. WMX Technologies, Inc.*, 112 F.3d 175, 177 (5th Cir. 1997); *see also id.* "Thus, fraud claims that do not meet the heightened pleading standard in federal court are not well-pleaded and cannot support a default judgment." *Edge Adhesives*, 2015 WL 12743618, at *3.

### 1. Berkley has stated a claim for conversion of money.

In the instant Motion, Berkley states:

> Under Texas law, to prevail on a claim for conversion, a plaintiff must prove: (1) it owned, possessed, or had a right to immediate possession of personal property; (2) the defendant wrongfully exercised dominion and control over such property; (3) the defendant refused to return the property on plaintiff's demand, and (4) the plaintiff suffered an injury.

ECF No. 13 at 4-5 (citing *United Mobile Networks, L.P. v. Deaton*, 939 S.W.2d 146, 147 (Tex. 1997); *Cluck v. Mecom*, 401 S.W.3d 110, 116 (Tex. App.—Houston [14th Dist.] 2011, pet. denied)). Berkley then persuasively argues that all four elements it cited are met. ECF Nos. 1 at 4, 13 at 5.

Additionally, "[a]ctions for conversion of money are available in Texas only where money is (1) delivered for safekeeping; (2) intended to be kept segregated; (3) substantially in the form in which it is received or an intact fund; and (4) not the subject of a title claim by the keeper." *In re TXNB Internal Case*, 483 F.3d 292, 308 (5th Cir. 2007); *see also U.S. v. Boardwalk Motor Sports, Ltd.*, 692 F.3d 378, 379 (5th Cir. 2012); *Settlement Capital Corp., Inc. v. Pagan*, 649 F.Supp.2d 545, 559 (N.D. Tex. 2009) ("As a general rule, an action for conversion of money will lie when the money can be identified as a specific chattel and there is an obligation to deliver that money or when [the four elements listed above are satisfied]."). Here, the tenants delivered money to their apartment complex for safekeeping, but Jimenez took it for her own use. Nothing in the record suggests that the rental proceeds were not specifically identified as separate funds, that Jimenez

was not obligated to handle those funds for Redwood, or that the second, third, and fourth elements have not been met, and the defendants have not appeared to dispute these elements. Therefore, Berkley has stated a claim for conversion of monies belonging to Redwood.

### 2.    Jimenez is liable to Berkley under the Texas Theft Liability Act.

Berkley alleges that "Jimenez unlawfully misappropriated Redwood's money with the intent to deprive Redwood of its money and refused to surrender possession of Redwood's money when specifically and rightfully requested by Berkley to do so." ECF No. 1 at 5. Berkley alleges that "[a]s such, Jimenez's acts constitute a violation of the Texas Theft Liability Act," making Jimenez liable for $169,078.36, additional damages of up to $1,000, and court costs and attorney's fees. *Id.* The "additional damages of up to $1,000" are not referenced in Berkley's "prayer for relief" in the initial complaint (ECF No. 1 at 10), nor are they referenced in the instant Motion (ECF No. 13), so the Court considers that Berkley has abandoned any argument for an additional $1,000 award under the Texas Theft Liability Act.

"[U]nder the Texas Theft Liability Act, 'a person who commits theft is liable for the damages resulting from the theft.'" *Safe Home Sec., Inc., v. Phila. Indem. Ins. Co.*, 581 F. Supp. 3d 794, 803 (N.D. Tex. 2021) (citing Tex. Civ. Prac. & Rem. Code § 134.003). "A person commits the criminal offense of theft, as defined under the Texas Penal Code, when he [ ] 'unlawfully appropriates property with intent to deprive the owner of the property.'" *Id.* (citing Tex. Pen. Code § 31.03). It is appropriate to apply this provision of the Texas Penal Code to employees who use company money for personal purposes while falsifying company books. *See generally Kelly v. State of Texas*, No. 05-22-00903-CR, 2024 WL 357052 (Tex. App.—Dallas [5th Dist.] Jan. 31, 2024, no pet.) (mem. op., not designated for publication).

Berkley has pleaded facts raising a right to relief above the speculative level for its Texas Theft Liability Act claim. Specifically, Berkley has shown, sufficiently to meet Rule 8 standards, that Jimenez unlawfully appropriated funds with the intent to deprive Redwood of them, and that Redwood—Berkley's assignee and subrogee—suffered damages as a result. Tex. Pen. Code § 31.03; *UnitedHealthcare Ins. Co. v. Murphy*, No. 5-18-CV-347-DAE, 2019 WL 12536545, at *8 (W.D. Tex. Aug. 20, 2019) ("[A] Texas Theft Liability Act claim is not subject to the heightened pleading standards or Rule 9(b)."). Under the Act, Jimenez is liable for those damages.

### 3.    Berkley has pleaded fraud sufficiently.

In its Motion, Berkley correctly explains:

> To prevail on a claim for fraud, a plaintiff must prove that (1) the defendant made a false, material representation; (2) the defendant knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth; (3) the defendant intended to induce the plaintiff to act upon the representation; and (4) the plaintiff justifiably relied on the representation, which caused the plaintiff injury.

ECF No. 13 at 5-6. *Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, 496 (Tex. 2019). Berkley then argues that all four elements are met.

As for the first two factors, Berkley writes that "Jimenez deceptively concealed her theft in Redwood's books and knowingly made false, material representations to Redwood that all rent payments were accounted for in Verandahs of Cliffside's books and that the books were true and accurate." ECF No. 13 at 6. As for the third factor, according to Berkley, Jimenez "intended for Redwood to rely upon her misrepresentations so that she could enrich herself." *Id*. As for the fourth factor, Redwood "rel[ied] on [Jimenez's] fraudulent bookkeeping to its detriment," Redwood was "justified in its reliance because of Jimenez's position of trust as an assistant manager tasked with collecting rent payments," and Redwood "was injured in the amount of $169,078.36 for the rent

payments that Jimenez unlawfully appropriated." *Id*. Redwood further alleges that Jimenez's actions "were committed with actual malice," entitling Redwood to exemplary damages. ECF No. 1 at 6.

Berkley has correctly recited the elements of common law fraud under Texas law. *See also Allstate Ins. Co. v. Receivable Fin. Co., L.L.C.*, 501 F.3d 398, 406 (5th Cir. 2007) (using a very similar definition). Furthermore, fraud must also be pleaded with particularity: as explained above, "articulating the elements of fraud with particularity requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams*, 112 F.3d at 177. Between its pleadings and the financial reports it provided, Berkley has met the standard set forth in *Williams*. Accordingly, Berkley is entitled to recover from Jimenez for fraud, as it has explained with particularity why each element of fraud is met.

### 4.    Berkley has stated a claim for unjust enrichment.

In the Complaint, Berkley alleges that "Defendants have been unjustly enriched because they willfully, intentionally, illegally or improperly obtained money from Redwood." ECF No. 1 at 6. Berkley argues that "[i]n equity, Defendants should bear the ultimate responsibility for the loss incurred by Redwood due to their willful, wanton, intentional, and illegal conduct." *Id*. "Despite demand, Defendants have wrongfully withheld money that belongs to Berkley as assignee and subrogee of Redwood." *Id*. "As a result, Defendants will be unjustly enriched if allowed to retain such property." ECF No. 1 at 7.

In the Motion, Berkley correctly explains that "[a] party may recover for unjust enrichment when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage." ECF No. 13 at 8 (citing *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d

39, 41 (Tex. 1992); *Freeman v. Harleton Oil & Gas, Inc.*, 528 S.W.3d 708, 742 (Tex. App.—

Texarkana 2017, pet. denied)); *see also Digital Drilling Data Systems, L.L.C. v. Petrolink Servs.*

*Inc.*, 965 F.3d 365, 379 (5th Cir. 2020). Applying this standard to the facts at hand, Berkley writes

that "Defendants obtained a benefit in the amount of $169,078.36 from Jimenez's theft of rent

payments from Redwood through Jimenez's conversion, theft, fraud, breach of fiduciary duty, and

constructive fraud, and their conspiracy." ECF No. 13 at 8. Given the facts surrounding brazen

theft that Berkley alleges, and given that Jimenez is liable for fraud as explained above and that

both Jimenez and Ferdinand have benefitted from this fraud, the undersigned concludes that

Berkley has stated a claim for unjust enrichment against both Jimenez and Ferdinand.

### 5.    Berkley has stated a claim for breach of fiduciary duty.

In the instant Motion, Berkley correctly explains:

> To prevail on a claim for breach of fiduciary duty, a plaintiff must
> show: (1) a fiduciary relationship between the plaintiff and
> defendant, (2) a breach by the defendant of his fiduciary duty to the
> plaintiff, and (3) an injury to the plaintiff or benefit to the defendant
> as a result of the defendant's breach.

ECF No. 13 at 6 (citing *Severs v. Mira Vista Homeowners Ass'n, Inc*., 559 S.W.3d 684, 703 (Tex.

App.—Fort Worth 2018, pet. denied). "When a fiduciary relationship of agency exists between

employee and employer, the employee has a duty to act primarily for the benefit of the employer

in matters connected with his agency." *Navigant Consulting, Inc., v. Wilkinson*, 508 F.3d 277, 283

(5th Cir. 2007).

Berkley then shows that Jimenez breached her fiduciary duty. "[She] was in a fiduciary

relationship with Redwood as the employee entrusted to collect and handle rent payments,"

"violated that trust and breached her fiduciary duty by stealing the rent payments and concealing

her theft by manipulating Redwood's books," and "[a]s a result of [her] breach of fiduciary duty,

[she] benefited by receiving $169,078.36 at the expense of Redwood." ECF No. 13 at 7. Furthermore, the facts suggest that rather than acting "primarily for the benefit of the employer," Jimenez acted primarily for her own benefit by wrongfully taking funds and falsifying records. *Navigant*, 508 F.3d at 283. Therefore, Berkley is entitled to default judgment against Jimenez on its claim for breach of fiduciary duty.

### 6.    Berkley has stated a claim for constructive fraud.

In the Motion, Berkley correctly explains that "to prove constructive fraud, a plaintiff must show that the defendant breached a legal or equitable duty that the law deems fraudulent because it violates a fiduciary relationship." ECF No. 13 at 7 (citing *Stum v. Stum*, 845 S.W.2d 407, 415 (Tex. App.—Fort Worth 1992, writ denied)); *see also Jacked Up, L.L.C. v. Sara Lee Corp.*, 854 F.3d 797, 810 (5th Cir. 2017); *Archer v. Griffith*, 390 S.W.2d 735, 740 (Tex. 1964) ("[C]onstructive fraud is the breach of some legal or equitable duty which, irrespective of moral guilt, the law declares fraudulent because of its tendency to deceive others, to violate confidence, or to injure public interests."). Based on the same facts that Berkley stated in support of its claim for breach of fiduciary duty, it is entitled to recover for constructive fraud.

### 7.    Berkley has stated a claim for money had and received.

Berkley correctly explains that "to prevail on a claim for money had and received, the plaintiff must establish that the defendant holds money that in equity and good conscience belongs to the plaintiff." ECF No. 13 at 8 (citing *Staats v. Miller*, 243 S.W.2d 686, 687–88 (Tex.1951); *Everett v. TK-Taito, L.L.C.*, 178 S.W.3d 844, 860 (Tex. App.—Fort Worth 2005, no pet.)); *see also Tour Strategy LLC v. Star-Telegram, Inc.*, No. 4:18-CV-074-A, 2018 WL 3242280, at *4 (N.D. Tex. July 3, 2018). Berkley alleges that "[b]y Jimenez's actions, Defendants now hold money that in equity and good conscience belongs to Berkley. Therefore, Defendants should be

liable to Berkley for its damages suffered as a result of Jimenez's actions." ECF No. 1 at 8. The Court agrees that Berkley has stated a plausible claim of money had and received against Defendants because they possess money that belongs to Berkley and refuse to return it.

### 8.    The Court should impose a constructive trust.

Under Texas law, "[t]o have a constructive trust imposed, a plaintiff must establish (1) a breach of a special trust or fiduciary relationship or actual or constructive fraud, (2) unjust enrichment of the defendant, and (3) an identifiable res that can be traced back to the original property." ECF No. 13 at 9 (citing *KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 87 (Tex. 2015)). "Unless the tracing requirement is observed with reasonable strictness, any suit on a debt or obligation could be used to impress a constructive trust on the assets of the defendant." *KCM Financial LLC v. Bradshaw*, 457 S.W.3d 70, 88 (Tex. 2015) (quoting *Peirce v. Sheldon Petroleum Co.*, 589 S.W.2d 849, 853 (Tex. 2015)). As for the first two elements, Berkley reiterates that Jimenez committed fraud and breached fiduciary duties, resulting in her unjust enrichment. ECF No. 13 at 9. As for the third element, Berkley attempts to trace the original property (the Funds) to the Fort Edwards house and to DFW Elite Motors. *Id.* at 9-10.

Regarding the Fort Edwards house, Berkley substantiates its allegation that the "Defendants purchased the [Fort Edwards house] in August 2021" using the Funds by stating that "[t]he audit report establishes that Jimenez's thefts date back to at least 2018 and culminated in October 2021, two months after the Defendants purchased the house." *Id.* at 9. Berkley also alleges that "[s]ome or all of the funds Jimenez stole from Redwood were used to purchase, renovate, maintain, or pay down the mortgage for the [Fort Edwards house]." *Id.*

As for DFW Elite Motors, Berkley alleges that "Defendants also opened a business called DFW Elite Motors LLC (the 'Business') in March 2023 following years of stealing rent payments

from Redwood, which Jimenez continues to operate." ECF No. 13 at 9. "Some or all of the funds Jimenez stole from Redwood were used to found or operate the Business." ECF No. 13 at 10.

The facts that Berkley alleges show that Jimenez breached her fiduciary duty to Redwood and that she is liable for unjust enrichment. The timing of the house purchase and business opening are sufficient to show that Defendants used all or at least some of Berkley's money in the acquisitions. Under these circumstances, imposition of a constructive trust as to the Fort Edwards home and DFW Elite Motors LLC is warranted. In a context where the Defendants have not appeared, thus preventing Berkley from offering evidence of more detailed tracing, imposing such a trust meets the "reasonable strictness" standard.

### 9.    The plaintiffs are entitled to default judgment on civil conspiracy.

"To state a claim for civil conspiracy, a plaintiff must allege '(1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result.'" *Engerium Health v. Gabali*, NO. 3:21-CV-2951-S, 2023 WL 6392631 at *7 (N.D. Tex. Sept. 29, 2023) (*citing Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983)). Berkley's pleadings generally address the first three elements with the statement that "the Defendants agreed that Jimenez would steal the rent payments that Redwood had entrusted to her." ECF No. 13 at 7. For the fourth element, "Jimenez's actions constitute theft and as such were unlawful . . ." *Id*. at 8. For the fifth element, Berkley states that "Redwood was actually damaged in the amount of the rent payments Jimenez stole according to the conspiracy she entered into with Ferdinand." ECF No. 8 at 14.

Although they had every opportunity to appear in the case and deny the allegations, Defendants failed to do so. Berkley's pleadings do not state many facts in support of its conspiracy claim, which is to be expected in a case in which the alleged wrongdoers have not appeared. But

the facts demonstrating that Jimenez stole money from her employer, that she and her husband purchased a home during the period that she was stealing from Redwood, that she opened a new business after she was caught stealing by her employer and continues to work in that business, and that she and Ferdinand do not respond to Berkley's suit all lead to the conclusion that they conspired to take the money as Berkley alleges.

In a civil conspiracy case, "[c]ircumstantial evidence may be used to establish any material fact, but it must constitute something more than mere suspicion." *Transport Ins. Co. v. Faircloth*, 898 S.W. 2d 269, 278 (Tex. 1995). In a default judgment context where the defendants have not appeared, the timing of the purchase of the home and opening of the business, both of which Ferdinand apparently lived in and enjoyed the fruits of, is sufficient to show a conspiracy in the absence of any evidence to the contrary. Because the facts alleged in the Complaint and Motion support Berkley's conspiracy claim, the undersigned recommends that Judge O'Connor grant Berkley's claim for civil conspiracy.

> **10.    Berkley is entitled to $169,078.36 in actual damages, plus attorney's fees to be awarded separately, pre-judgment and post-judgment interest, and costs.**

Default judgment is appropriate against Defendants. But the Court's inquiry does not end there. Having concluded default judgment is proper, the Court must now "determine what form of relief, if any, the plaintiff should receive." *Morelia*, 126 F. Supp. 3d at 814. "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). This is the only step in the inquiry where the Court does not assume the truth of the pleadings. *See Shipco*, 814 F.2d at 1014 ("After a default judgment, the plaintiff's well-pleaded factual allegations are taken as true, except regarding damages."). Generally, plaintiffs cannot summarily provide the Court with figures for damages or attorney's fees without explanation. Rather, they must "establish[] the necessary facts," either through detailed affidavits or an

17

evidentiary hearing, to make the amount "capable of mathematical calculation." *United Artists*, 605 F.2d at 857.

Here, Berkley seeks "the principal sum of $169.078.36, plus pre-judgment interest at the current Texas rate of 8.50% in the amount of $28,782.70 and post-judgment interest at the current federal rate of 5.46% until paid in full." ECF No. 13 at 13. It also seeks "exemplary damages in the amount of $169,078.36." *Id*. Furthermore, it seeks "attorney's fees, costs, and expenses in the amount of $12,306.88, plus $40,000 in conditional attorney's fees in the event the Judgment is challenged or appealed." *Id*. Additionally, it requests that the Court impose a constructive trust on the Fort Edwards property and on the assets of DFW Elite Motors LLC, and it also seeks "such other and further relief to which Berkley may be justly entitled." *Id*.

### 11.    Berkley is entitled to $169,078.36 in actual damages.

In support of its claim for actual damages in the amount of $169.078.36, Berkley provides a lengthy Audit Report (ECF No. 1-1), its Summary of Total Loss (ECF No. 1-2), and the Declaration of Sherry Wersten. ECF No. 13-1. For the reasons explained above, this damages award is appropriate. *See, e.g.*, Tex. Civ. Prac. & Rem. Code § 134.003 ("A person who commits theft is liable for the damages resulting from the theft.").

### 12.    Berkley is entitled to exemplary damages in the amount of $169,078.36.

Berkley also argues for exemplary damages in the amount of $169,078.36 because Jimenez is liable to it for fraud. ECF No. 13 at 11, 13. Under Texas law, a plaintiff that shows by clear and convincing evidence that it has been injured by fraud may recover punitive damages. Tex. Civ. Prac. & Rems. Code § 41.003(a); *ERI Consulting Eng'rs, Inc. v. Swinnea*, 318 S.W.3d 867, 880 (Tex. 2010). Berkley has made such a showing here, so it is entitled to recover exemplary damages.

18

The amount of exemplary damages it requests is reasonable given the circumstances surrounding this case. "There can be no set rule or ratio between the amount of actual and exemplary damages which will be considered reasonable. This determination must depend upon the facts of each particular case." *Alamo Nat. Bank v. Kraus*, 616 S.W.2d 908, 910 (Tex. 1981).

> Factors to consider in determining whether an award of exemplary damages is reasonable include (1) the nature of the wrong, (2) the character of the conduct involved, (3) the degree of culpability of the wrongdoer, (4) the situation and sensibilities of the parties concerned, and (5) the extent to which such conduct offends a public sense of justice and propriety.

*Id*. Accounting fraud and embezzlement of an employer's funds are serious wrongs that erode trust in the workplace and injure innocent parties. Accordingly, the first and second factors are met. *Id*. The Defendants appear highly culpable, and the situation merits a response that acknowledges such culpability. Therefore, the third and fourth factors are met. *Id*. Finally, fraud clearly "offends a public sense of justice and propriety" and must be strongly deterred. *Id*. Therefore, an award of damages in the same amount as actual damages is reasonable here.

### 13. Berkley is entitled to its reasonable attorney's fees, but the evidence offered in support of its claim is insufficient at this time.

Berkley is entitled to reasonable and necessary attorney's fees because it has prevailed on its claim under the Texas Theft Liability Act, which provides that "'each person who prevails . . . shall be awarded court costs and reasonable and necessary attorney's fees.'" *Transverse, L.L.C. v. Iowa Wireless Servs., L.L.C.*, 753 F. App'x. 184, 190 (5th Cir. 2018) (quoting Tex. Civ. Prac. & Rem. Code § 134.005(b)).

In support of its claim for attorney's fees, Berkley offers the Affidavit of Austin Brakebill ("Mr. Brakebill"). ECF No. 13-2. This Affidavit states that "[s]ince the inception of this matter, Berkley has incurred attorney's fees and expenses in the amount $12,306.88." *Id*. at 3. It also

provides that Mr. Brakebill has "reviewed the reported charges of time and expenses" and finds that "the rates charged for such services have been reasonable and necessary in every instance." *Id*. It also estimates that Berkley will incur $7,500 in attorney's fees in securing default judgment, "including conducting a hearing and drafting any reply brief in response" to the Motion. *Id*. The Affidavit also reflects Mr. Brakebill's opinion that Berkley will incur an additional $17,500.00 in attorney's fees if the judgment is appealed to the United States Court of Appeals for the Fifth Circuit and affirmed; and an additional $15,000 in attorney's fees if the case is appealed successfully to the Supreme Court. *Id*. The record does not contain a more detailed breakdown of the hours worked that would help the Court discern whether the $12,306.88 thus far incurred is reasonable.

Step one in determining an appropriate fee award involves finding the lodestar, which "is the product of the number of hours reasonably expended on the litigation multiplied by a reasonable hourly billing rate." *League of United Latin American Citizens No. 4552 (LULAC) v. Roscoe Indep. Sch. Dist.*, 119 F.3d 1228, 1232 (5th Cir. 1997). But without information about how many hours were "reasonably expended on the litigation," the undersigned cannot tell whether the $12,306.88 total fee requested is reasonable. *Id*.

The Court can adjust that lodestar up or down based on an analysis of the twelve *Johnson* factors. *See Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). The factors are:

> (1) the time and labor required for the litigation; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature

and length of the professional relationship with the client; and (12)
awards in similar cases.

*Migis v. Pearle Vision, Inc*., 135 F.3d 1041, 1047 (5th Cir. 1998) (citing *id*.). Without further

information about the number of hours worked, however, it is difficult for the Court to perform a

full analysis of these factors, especially factors 1, 5, and 6. Accordingly, Judge O'Connor should

award Berkley its reasonable attorney's fees in an amount to be determined by subsequent briefing

and evidence that will demonstrate the number of hours worked and address the *Johnson* factors.

### 14.    Berkley is entitled to recover its taxable court costs.

As a prevailing party, Berkley also is entitled to recover its costs, unless a federal statute,

a federal rule, or the Court provides differently. Fed. R. Civ. P. 54(d)(1). Taxable court costs

applicable to this case include (1) fees paid to the clerk and marshal; (2) court reporter fees for

deposition transcripts; (3) witness fees and related expenses; (4) printing fees; and (5) fees for

copies of papers necessarily obtained for the case. 28 U.S.C. § 1920. There is "a strong

presumption that the prevailing party will be awarded costs." *Schwarz v. Folloder*, 767 F.2d 125,

131 (5th Cir. 1985) (citing *Delta Air Lines, Inc. v. August*, 450 U.S. 346, 352 (1981)). For these

reasons, the Court should award Berkley its taxable court costs.

### 15.    Berkley is entitled to pre-judgment and post-judgment interest.

"[I]n diversity cases . . . pre-judgment interest is calculated under state law." *Bos. Old

Colony Ins. Co. v. Tiner Assocs. Inc.*, 288 F.3d 222, 234 (5th Cir. 2002) (citation omitted). In a

Texas Theft Liability Act case, the Fifth Circuit explained that "equitable prejudgment interest,

which focuses on the need to compensate a plaintiff for the defendant's beneficial use of the

damage funds between the time the injury occurred and the time the judgment was rendered, is

available as a matter of course, absent exceptional circumstances." *Matter of Okedokun*, 968 F.3d

378, 392 (5th Cir. 2020). "The trial court may exercise its discretion to forego an award of

prejudgment interest in the presence of 'exceptional circumstances,' but those circumstances must be explained." *Id*.

Federal courts in Texas have awarded prejudgment interest under Section 304.103 of the Texas Finance Code in cases under the Texas Theft Liability Act. *In re Cowin*, 492 B.R. 858, 9004-05 (S.D. Tex. 2013). This section of the Code explains that prejudgment interest accrues at the same rate as post-judgment interest. Tex. Fin. Code § 304.103. When a court awards pre-judgment interest under Section 304.103, "prejudgment interest accrues on the amount of a judgment during the period beginning on the earlier of the 180th day after the date the defendant receives written notice of a claim or the date the suit is filed and ending on the day preceding the date judgment is rendered." Tex. Fin. Code § 304.104.

Accordingly, the undersigned recommends awarding Berkley prejudgment interest at the same rate as the post-judgment interest in this case, as no exceptional circumstances justify denying Berkley such an award. *Matter of Okedokun*, 968 F.3d at 392; Tex. Fin. Code §§ 304.103-104. The day that Berkley notified the defendants of the claim (May 8, 2023, per ECF No. 1-6) preceded the date it filed suit (August 13, 2023, per ECF No. 1), but by less than 180 days, so pre-judgment interest accrues from August 13, 2023 until the date final judgment is entered. Tex. Fin. Code § 304.104.

The Court should award Berkley post-judgment interest at the federal rate under 28 U.S.C. § 1961(a). *Colony*, 288 F.3d at 234 (citation omitted). Post-judgment interest compounds annually. *Craig v. GACP II, L.P.*, No. 3:19-cv-0058-G, 2022 WL 1778392, at *4 (N.D. Tex. June 1, 2022). Courts award post-judgment interest "on the entire amount of the final judgment, including damages, pre-judgment interest, and attorney's fees." *Fuchs v. Lifetime Doors, Inc.*, 939 F.2d

1275, 1280 (5th Cir. 1991). Thus, Judge O'Connor should grant Berkley's request for post-judgment interest at the federal rate from the date of final judgment until it is paid in full.

## IV.   CONCLUSION

Default judgment is procedurally warranted, and Berkley has pleaded sufficient facts to recover from Defendants under the causes of action stated. Accordingly, the undersigned **RECOMMENDS** that Judge O'Connor **GRANT** Plaintiff's Motion for Default Judgment (ECF No. 13), **IMPOSE** a constructive trust on 321 Fort Edwards Dr., Arlington, Texas 76002 and DFW Elite Motors LLC's assets, and **AWARD** $169,078.36 in actual damages, $169,078.36 in exemplary damages, costs as calculated by the clerk, pre-judgment and post-judgment interest under applicable law, and reasonable attorney's fees in an amount to be entered in a subsequent order following additional briefing.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). To be specific, an objection must identify the particular finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), modified by statute, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).

**SIGNED** on July 9, 2024.

Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE